PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KALILO ROBINSON, | ) |
| | ) CASE NO. 4:16CV3011 |
| Plaintiff, | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| MAHONING COUNTY, *et al.*, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No. 3] |

Pending is Defendants' Motion to Dismiss (ECF No. 3) pursuant to Fed. R. Civ. P. 12(b)(6). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, the motion is granted.[1]

## I. Background

In April 2016, Plaintiff was indicted in Mahoning County, Ohio Court of Common Pleas Case No. Case No. 2016 CR 00342. He was charged with two counts of obstructing justice and one count of tampering with evidence. Indictment (ECF No. 1-4). In a judgment entry filed August 16, 2016, the trial court dismissed the case upon recommendation of the prosecution and for good cause shown.

Plaintiff was a material witness in a criminal case in Mahoning County, Ohio Court of Common Pleas Case No. 2015 CR 00538. In a judgment entry filed August 16, 2016, the trial court ordered Plaintiff held in jail without bond until September 2, 2016. *Robinson v. Green*, No.

---

[1] On March 22, 2017, the Court announced its decision during the Case Management Conference.

(4:16CV3011)

16 MA 0134, 2016 WL 4697962, at *1, ¶ 2 (Ohio App. 7th Dist. Aug. 30, 2016) (per curiam) (ECF No. 1-8). Plaintiff filed a petition for writ of habeas corpus in the Seventh District Court of Appeals of Ohio on August 24, 2016. The next day, the trial court filed a judgment entry in which it issued a warrant and ordered Plaintiff held in jail without recognizance, but this time noting that the order had been based upon a motion and affidavit presented by the prosecution to the trial court. *Id.* at *1, ¶ 3. On August 30, 2016, the state Court of Appeals granted the petition for writ of habeas corpus and ordered that Plaintiff be discharged from custody. *Id.* at *3, ¶ 12.

In December 2016, Plaintiff Kalilo Robinson, through counsel,[2] filed a Complaint (ECF No. 1) against Defendants Mahoning County, Mahoning County Prosecutor Paul Gains, Assistant Mahoning County Prosecutors Dawn Cantalamessa, in her individual and official capacities, and Shawn Burns, in his official capacity, asserting claims for malicious prosecution under 42 U.S.C. § 1983 (Count One), failure to train (Count Two), and false imprisonment (Count Three). Plaintiff makes the following allegations:

> 15. On or about January 19, 2016, Defendant Dawn Cantalamessa acting under color of state law, and acting willfully, wantonly, purposely, and with deliberate indifference to Plaintiff's rights, privileges, and immunities, threatened to pursue an indictment against the Plaintiff for the crime of murder and aggravated murder. At the time, Plaintiff was a witness in a case in Mahoning County, State V. White, 2015 CR 0538. Plaintiff had expressed an unwillingness to testify in this case. . . .
> \* \* \*
> 17. On or about April 7, 2016, Defendants Dawn Cantalamessa and Shawn Burns acting under color of state law, and acting willfully, wantonly, purposely, and with deliberate indifference to Plaintiff's rights, privileges, and immunities, obtained an indictment against the Plaintiff for the crime of obstruction of justice

---

[2] Plaintiff has been represented by James R. Wise throughout all the proceedings, including the case at bar.

2

(4:16CV3011)

> and tampering with evidence. Said indictment . . . was obtained by misrepresenting facts to the grand jury. . . .
>
> \* \* \*
>
> 20. On August 16, 2016 Defendant Dawn Cantalamessa misrepresented to the Court in State V. White Case no. 15 CR 538 that there were phone calls of the Plaintiff recorded at the Mahoning County Justice Center in which Plaintiff intended to go to the State of Tennessee and not appear as required in the case of State V. White. As a result of the misrepresentations of the Defendant, Kalilo Robinson, as a witness, was held without bond. . . .
>
> \* \* \*
>
> 22. On August 24, 2016, Defendant Cantalamessa filed a motion for material witness warrant and in a sworn affidavit stated "KALILO ROBINSON plans to leave town as soon as he is out of jail and not return for trial". Said statement was a misrepresentation of the recorded phone calls. . . .
>
> \* \* \*
>
> 32. Out of deliberate indifference and/or unofficial custom and policy, Defendant Paul Gaines failed to adequately train or supervise his employees as to the violation of constitutional rights and what constitutes unlawful prosecutorial conduct.
> 33. The actions of Defendant Paul Gains, as Mahoning County Prosecutor, in failing to properly train [his] officials and employees in proper methods [of] prosecutorial conduct, constitute a violation of [the] Mahoning County Prosecutor's obligations to maintain lawful policies and procedures.

ECF No. 1 at PageID #: 4-5, 7.

In Count One, Plaintiff brings a claim under § 1983, alleging that Defendants violated his Fourth Amendment rights. Specifically, he alleges that Assistant Prosecutors Cantalamessa and Burns maliciously prosecuted him by obtaining an indictment knowing that it was without probable cause. ECF No. 1 at PageID #: 6, ¶ 25. In addition, Plaintiff alleges that Defendants acted "with malice, willfulness, and purposeful indifference" to his rights, he was "deprived of his freedom and liberty," and he incurred losses stemming from these violations. ECF No. 1 at PageID #: 6, ¶¶ 26, 27 and 28.

In Count Two, Plaintiff brings a § 1983 claim under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) alleging that Prosecutor Gains violated Plaintiff's rights through

3

(4:16CV3011)

an "unofficial" custom and policy wherein Prosecutor Gains failed to adequately train and supervise "his employees as to the violation of constitutional rights and what constitutes unlawful prosecutorial conduct." ECF No. 1 at PageID #: 7, ¶ 32. Plaintiff also alleges that Prosecutor Gains, "through [his] employees and agents . . . acted with deliberate indifference and acted purposely, willfully, wantonly and recklessly. ECF No. 1 at PageID #: 7, ¶ 34.

In Count Three, Plaintiff brings a claim for false imprisonment against Prosecutor Cantalamessa. He alleges that Assistant Prosecutor Cantalamessa filed documents with the trial court containing "false and/or misrepresented facts in order to obtain a Material Witness Warrant" against him. ECF No. 1 at PageID #: 8, ¶ 39. According to Plaintiff, this warrant caused him to be incarcerated, thereby depriving him of his "freedom and liberty" until the state Court of Appeals ordered that he be released from custody. ECF No. 1 at PageID #: 8, ¶ 40.

## II. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Twombly*, 550 U.S. at 564. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint

(4:16CV3011)

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

### III. Analysis

Defendants argue that Plaintiff has failed to state a claim for relief by application of various defenses, including but not limited to the doctrines of common law sovereign, prosecutorial and Eleventh Amendment immunity. They also contend that Plaintiff's § 1983 claim under *Monell* should be dismissed.

(4:16CV3011)

### A. Absolute Prosecutorial Immunity

The Complaint (ECF No. 1) alleges that Plaintiff is suing Assistant Prosecutor Cantalamessa in both her individual and official capacities. ECF No. 1 at PageID #: 3, ¶ 9. Prosecutors are absolutely immune from liability in § 1983 suits brought against them for acts that are "'intimately associated with the judicial phase of the criminal process' . . . [because of] 'concern that harassment by unfounded litigation' could both 'cause a deflection of the prosecutor's energies from his public duties' and also lead the prosecutor to 'shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423, 430 (1976)). *See also Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002). Absolute prosecutorial immunity even applies when a prosecutor acts wrongfully or maliciously. *See Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (prosecutor absolutely immune from suit for allegedly conspiring to present false charges to the grand jury); *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) (noting that simply because the plaintiff "ascribes impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions."); *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) ("Absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed . . . in a habeas corpus proceeding. . . . The decision to prosecute . . . even if malicious and founded in bad faith, is unquestionably advocatory[.]" (internal citations omitted)).

(4:16CV3011)

Plaintiff opposes Defendants' argument regarding absolute prosecutorial immunity by relying on *Buckley v. Fitzsimmons*, 509 U.S. 259, 269-75 (1993). *See* Memorandum in Opposition (ECF No. 6) at PageID #: 104-107. Emboldened, Plaintiff summarily states that "Assistant Prosecutors Burns and Cantalamessa are only entitled to qualified immunity and not absolute immunity." ECF No. 6 at PageID #: 107. *Buckley*, however, states that under federal law, prosecutors are entitled to absolute immunity from lawsuits arising from "the duties of the prosecutor in his role as advocate for the State" as well as "actions preliminary to the initiation of a prosecution and actions apart from the courtroom[.]" *Id.* at 272 (quoting *Imbler*, 424 U.S. at 431 n. 33).

In an effort to further rebut Defendants' absolute prosecutorial immunity argument, Plaintiff states "the real question is not one of immunity but whether this Plaintiff can meet his burden to prove a malicious prosecution claim." ECF No. 6 at PageID # 107. Other than making this broad conclusion, Plaintiff provides no factual analysis whatsoever. Instead Plaintiff cites to case law providing for the elements of a malicious prosecution cause of action and then makes the blanket conclusion that "[t]here is no question that the Complaint filed by the Plaintiff meets all of the elements as set forth above." ECF No. 6 at PageID # 109. Such broad conclusions cannot refute a motion to dismiss as a matter of law. *Twombly*, 550 U.S. at 555.

As a state prosecutor, Assistant Prosecutor Cantalamessa is thus entitled to absolute immunity on any personal claim for damages arising from her advocacy in Plaintiff's state criminal proceedings.

(4:16CV3011)

### B. Official Capacity Claims Against Assistant Prosecutors Cantalamessa and Burns and Mahoning County

It is well-established that a § 1983 civil action against a state actor in his official capacity is, in reality, an action against the municipal entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). As such, Plaintiff's official capacity claims against Prosecutor Gains and Assistant Prosecutors Cantalamessa and Burns are really just claims against Mahoning County. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

A governmental entity, such as Mahoning County, can be found liable under § 1983 only where the entity itself causes the constitutional violation at issue. *See Monell*, 436 U.S. at 694. "It is only when the 'execution of [the] government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting) (quoting *Monell*, 436 U.S. at 694). Therefore, Mahoning County may be liable under § 1983 only if its policy or custom *caused* the alleged constitutional injury. *Monell*, 436 U.S. at 694. Governmental entities "do not 'cause' constitutional violations solely by having employed a constitutional tortfeasor." *Feliciano v. City of Cleveland*, 988 F.2d 649, 654-55 (6th Cir.1993). *See also Jackson v. Hamilton Cty. Com'rs*, 76 F. Supp.2d 831, 836 (S.D. Ohio 1999) ("The Hamilton County Commissioners are not liable for the recommendations of a prosecuting attorney and the possible effects those recommendations may, or may not, have on subsequent judicial decisions.").

(4:16CV3011)

Plaintiff fails to allege a single fact in the Complaint (ECF No. 1) supporting the proposition that Mahoning County itself caused Plaintiff harm. A failure to identify a policy of the County under which Plaintiff believes he was harmed is fatal to his case. Accordingly, all official capacity claims against Assistant Prosecutors Cantalamessa and Burns and Mahoning County are dismissed.

### C. *Monell* Claims Against Prosecutor Gains

A plaintiff asserting a § 1983 claim under *Monell* "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *Monell*, 436 U.S. at 694. A plaintiff must show that his constitutional rights were violated and that a policy or custom of Prosecutor Gains was the "moving force" behind the deprivation of Plaintiff's rights. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010). Accordingly, a plaintiff must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478.

Plaintiff asserts that Prosecutor Gains failed to adequately train and supervise "his employees as to the violation of constitutional rights and what constitutes unlawful prosecutorial conduct." ECF No. 1 at PageID #: 7, ¶ 32. A failure to train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the county has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller*, 606 F.3d at 255 (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.

9

(4:16CV3011)

2005)). A review of the Complaint (ECF No. 1) shows that Plaintiff has not set forth allegations that there were prior instances of similar misconduct so as to show that Prosecutor Gains was on notice that the training and supervision of Assistant County Prosecutors with respect to "what constitutes unlawful prosecutorial conduct" was deficient. *See also Van de Kamp*, 555 U.S. at 343-44, 347-48 (holding that a failure to train or supervise claim against a municipal entity, specifically in the context of a prosecutor's office, is ill-advised and almost universally prohibited).

To the extent the Complaint (ECF No. 1) seeks to impose liability against Prosecutor Gains in his capacity as the supervisor of Assistant Prosecutors Cantalamessa and Burns over whom Plaintiff claims violated his Constitutional rights, *see* ECF No. 1 at PageID #: 7, ¶ 31, § 1983 liability cannot be premised solely on a theory of *respondeat superior* or the right to control employees. *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872 (6th Cir.1982). Plaintiff's effort to sue Prosecutor Gains under the doctrine of *respondeat superior* is improper absent allegations of personal involvement on his part. *See Monell*, 436 U.S. at 694; *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (In order for a supervisor to be liable under § 1983, there "must be a showing that [he] encouraged the specific incident of misconduct or in some other way directly participated in it.") (quoting *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995)).

Accordingly, the Court grants Defendants' Motion to Dismiss as to the municipal liability claim against Prosecutor Gains.

**D. Eleventh Amendment Immunity**

Assuming *arguendo* that both an underlying Constitutional violation as well as an

10

(4:16CV3011)

identifiable policy – which acted as the "moving force" behind the deprivation of Plaintiff's rights – is found (and which offending "policy" further survives *Van de Kamp* analysis), the claims against Prosecutor Gains and Assistant Prosecutors Cantalamessa and Burns in their official capacities should still be dismissed on the basis of Eleventh Amendment immunity.

When a county prosecutor makes the decisions related to the issuance of state criminal charges against the plaintiff and the prosecution of the plaintiff, he is acting as an agent of the state rather than of the county. *Cady v. Arenac Cty.*, 574 F.3d 334, 345 (6th Cir. 2009); *Bowman v. Warren Cty. Regional Jail*, No. 95-6241, 1996 WL 343520, at *2 (6th Cir. June 20, 1996). In *O'Connor v. Kelty*, No. 4:10CV0338, 2010 WL 2650198 (N.D. Ohio July 2, 2010) (Adams, J.), the court dismissed claims against a county prosecutor based, in part, on the fact that the prosecutor was entitled to Eleventh Amendment immunity:

> There is no indication in the complaint that Peacock acted outside the scope of his professional responsibilities. As discussed herein, pleading official capacity is another way of stating a claim against an entity of which a defendant is an agent. [*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)]. Prosecutors act as state agents when prosecuting criminal charges. Consequently, a suit against a prosecutor in his official capacity is to be treated as a suit against the state. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (noting that a suit against a state official in his official capacity is no different than a suit against the state itself); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (noting that a county prosecutor, as an officer of the court, is acting on behalf of the state when prosecuting state charges). Under the Eleventh Amendment, a state cannot be sued in federal court without its consent. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Therefore, Peacock is dismissed as a defendant in both his official and individual capacities.

*Id.* at *3.

Here too, Prosecutor Gains and Assistant Prosecutors Cantalamessa and Burns are entitled to Eleventh Amendment immunity based on their actions on behalf of the State of Ohio.

(4:16CV3011)

### E. State Law Claims Against Prosecutor Gains and Assistant Prosecutors Cantalamessa and Burns

To the extent the Complaint (ECF No. 1) asserts state law claims of malicious prosecution and/or false imprisonment against Prosecutor Gains or Assistant Prosecutors Cantalamessa and/or Burns based upon their decisions to charge or charging and dismissing the charges against Plaintiff, such claims are barred by the state law doctrine of sovereign immunity codified under Chapter 2744 of the Ohio Revised Code. Chapter 2744 governs political-subdivision tort liability. Ohio Rev. Code § 2744.03(A) prescribes the defenses or immunities that a political-subdivision employee may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function. *Argabrite v. Neer*, No. 2015-0348, 2016 WL 7449213, at *2, ¶ 7 (Ohio S. Ct. Dec. 27, 2016). Section 2744(A) provides, in pertinent part:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
> \* \* \*
> (7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.

As stated by the Ohio Supreme Court in *Willitzer v. McCLoud*, 6 Ohio St.3d 447 (1983):

> It is a well-established rule that judges, counsel, parties, and witnesses are absolutely immune from civil suits for defamatory remarks made during and relevant to judicial proceedings. . . .
> \* \* \*
> The same considerations underlying the immunity of judges provided the basis for immunity of prosecutors. Thus, prosecutors are considered "quasi-judicial

12

(4:16CV3011)

> officers" entitled to absolute immunity granted judges, when their activities are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman* (1976), 424 U.S. 409, 430. . . .

*Id.* at 448-49.

To the extent the Complaint (ECF No. 1) asserts these state law claims, Prosecutor Gains and Assistant Prosecutors Cantalamessa and Burns are immune. *Lower v. City of Columbus*, No. 2:16-CV-0394, 2016 WL 7230853, at *4 (S.D. Ohio Dec. 14, 2016).

Finally, to the extent Plaintiff is raising state law claims of malicious prosecution and/or false imprisonment against Mahoning County, Chapter 2744 of the Ohio Revised Code also affords said political subdivision with immunity from tort liability. The Ohio Supreme Court has outlined a three-tier analysis for determining whether a political subdivision is entitled to immunity under Chapter 2744.

> . . . The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B).
> The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. . . .
> If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Colbert v. Cleveland*, 99 Ohio St.3d 215, 216, ¶ 7-9 (2003) (citations omitted). The statutory definition of "governmental function" includes prosecutorial functions. Ohio Rev. Code § 2744.01(C)(2)(f). The case at bar involves the provision of prosecutorial functions. None of the exceptions listed in Ohio Rev. Code § 2744.02(B), denying general liability, applies to the facts

(4:16CV3011)

alleged in this case. The injuries alleged by Plaintiff do not involve the operation of a motor vehicle (§ 2744.02(B)(1)), a proprietary function (§ 2744.02(B)(2)), public roads (§ 2744.02(B)(3)), physical defects of a building (§ 2744.02(B)(4)), or a duty expressly imposed on Mahoning County by statute (§ 2744.02(B)(5)). Accordingly, under Chapter 2744, Mahoning County is also entitled to statutory immunity from Plaintiff's state law claims. *Lower*, 2016 WL 7230853, at *4-5.

### IV. Conclusion

For the reasons set forth above and those that have been articulated in the memoranda of points and authorities on which Defendants rely in support of the motion, Defendants' Motion to Dismiss (ECF No. 3) is granted.

IT IS SO ORDERED.

| | |
|---|---|
| April 19, 2017 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |